### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHAWNA M. NIELSEN, ) | CASE NO. 8:04CV583 |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM |
| vs. ) | AND ORDER |
| ) | |
| ROD BIXLER, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 25). Both parties have submitted briefs and indexes of evidence. For the reasons stated below, the Defendant's motion will be granted.

## FACTS

On July 29, 2003, the Plaintiff Shawna Nielsen, a Nebraska resident, was driving on a public roadway in Lyons, Nebraska. (Complaint, Filing No. 1, ¶4). A 15-year-old girl was also present in the car. (Deposition of Shawna M. Nielsen, Filing No. 33, Ex. 1 (hereafter Nielsen Depo.) 14:24-25; 15:13-15). Both Nielsen and the minor had been consuming alcohol. (Nielsen Depo. 22:9-20). The Defendant, Rod Bixler, a Lyons police officer, pulled Nielsen's car over for failure to stop at a stop sign and failure to signal. (Nielsen Depo. 19:8-11; Deposition of Rod Bixler, Filing No. 36-1 (hereafter Bixler Depo.) 12:10-15). Bixler observed an open 12-pack of beer in the back seat of the car, detected the odor of alcoholic beverages, and asked Nielsen for permission to search the car. (Nielsen Depo. 20:9-16; Bixler Depo. 117:21 to 18:13). Nielsen granted Bixler permission to search, and Bixler then found a partially-consumed bottle of beer in Nielsen's car between the driver's seat and the console. (Nielsen Depo. 20:17 to 21:14; Bixler Depo.

18:11 to 19:5). Bixler suspected that Nielsen was under the influence of alcohol. (Bixler Depo. 16:7-15).

As Bixler was searching the vehicle, Nielsen started to feel a need to change her sanitary napkin due to a heavy menstrual flow. (Nielsen Depo. 28:18-23). Nielsen asked Bixler for permission to use a restroom. (Nielsen Depo. 26:16-23). Bixler denied the request, but did permit Nielsen to retrieve a sanitary napkin from the trunk of her car. (Nielsen Depo. 29:14-21; Bixler Depo. 19:9-22).

Bixler directed Nielsen to the passenger seat of his police cruiser and informed her that he would need to observe her for an uninterrupted period of fifteen minutes before he could administer a breathalyzer test. (Nielsen Depo. 29:25 to 30:8). Nielsen again asked Bixler for permission to use a restroom, and Bixler again denied the request. (Nielsen Depo. 33:1-18; Bixler Depo. 23:19 to 24:13). Bixler perceived that Nielsen's conduct prior to entering the cruiser did not indicate any "dire need" to use a restroom. (Bixler Depo. 36:15-22; Video tape of incident, (Filing No. A33, Ex.3) hereafter the "video"). Nielsen decided to apply the new sanitary napkin to prevent the risk of potential overflow of menstrual blood, because she felt that she would be humiliated if menstrual blood leaked through her clothing. (Nielsen Depo. 31:5-7; 33:14-18; Bixler Depo. 29: 9-19). Bixler held a folder or clipboard between himself and Nielsen with the intention of blocking his view.[1] (Nielsen Depo. 32:10-16; 45:7-14; Bixler Depo. 29:20-25; 31:18-22). Nielsen pulled down her shorts[2] just enough to allow her to place the new sanitary napkin on top of the one

---

[1] The video records Bixler stating to Nielsen, "I'm sure not going to watch that," in response to her request to apply a new sanitary napkin.

[2] The video shows that Nielsen was wearing black athletic shorts, reaching to mid-thigh. It also reveals that Bixler was courteous and professional throughout the episode, and that Nielsen appeared to be relaxed and cooperative. With the exception of one brief comment and gesture

2

already in place.  (Nielsen Depo. 31:19 to 32:9).  The procedure took approximately ten seconds.  (Nielsen Depo. 32:5-9).  Bixler states that he turned his head and did not look at Neilsen when she positioned the new sanitary napkin, and she states that she did not look at him.  (Nielsen Depo. 32:17-18; Bixler Depo. 29:20-25; 31:18-22).

After the fifteen-minute period elapsed, Bixler administered a breathalyzer test, and the test revealed that Nielsen's blood alcohol content was over .08.  (Nielsen Depo. 34:6-7).  Bixler then transported Nielsen to a police station where she was allowed to use a restroom.  (Nielsen Depo. 34:8-10; 36:6-10).  Bixler gave Nielsen written warnings for the stop sign violation and the failure to signal violation, and a citation for DWI.  (Bixler Depo. 15:11-16).  Throughout the events described above, Bixler was pleasant and was not rude. (Neilsen Depo. 35:20-24).

Nielsen does not deny that the traffic stop, the search of the vehicle, the administration of the breathalyzer test, and the subsequent arrest all were lawful.  (Nielsen Depo. 40:16-24).  In her Complaint, however, she alleges that Bixler, in his official capacity and individually, violated her right of privacy and her right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution, giving rise to causes of action under 42 U.S.C. §1983.[3]  (Filing No. 1, ¶¶14-19).

---

made by Nielsen to a passer-by, all parties appear to be cheerful and friendly throughout the episode.

[3] 42 U.S.C. § 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress . . . ."

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id*. at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*. at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

According to Nielsen's brief in opposition to the Motion for Summary Judgment, "Ms. Nielsen brought the case because she was humiliated by Bixler's refusal to permit her to use a nearby bathroom or to leave the front seat of the patrol unit he was holding her in while she performed a feminine hygiene procedure which was immediately required to prevent the leakage of blood through her clothing and onto the seat of Bixler's patrol unit." (Filing No. 35, p.1).  Nielsen contends that Bixler's conduct violated her "Fourth Amendment privacy rights" or should be viewed as a "nonconsensual violation of her intimate bodily integrity constituting an inexcusable, conscience-shocking justiciable claim under the Fourteenth Amendment." (*Id.*).  Nielsen acknowledges, however, that any Fourteenth Amendment claim is not viable in this circuit and "Plainitff concedes her claim is properly analyzed under Fourth Amendment principles."  (*Id.*, p. 4, citing *Hawkins v. Holloway,* 316 F.3d 777 (8th Cir. 2003)).[4]

---

[4]"In the context of allegations that a state official has abused his executive power, the test we employ to ascertain a valid substantive due process violation is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hawkins v. Holloway*, 316 F.3d 777, 780 (8th Cir. 2003), quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998).  In *Hawkins*, a substantive due process violation was effectively alleged where the evidence showed that the defendant sheriff pointed loaded weapons at the plaintiff-employees at close range while he was agitated and with his finger on the trigger, pointing to their genitals, and making direct and forceful threats to kill them or cause grievous bodily injury.  "[A]n official's conduct must generally be intended to inflict harm to be conscience shocking in the constitutional sense." *Hawkins*, 316 F.3d at 788, citing *Lewis*, 523 U.S. at 849.

5

Nielsen does not argue that Bixler conducted any unreasonable seizure,[5] but alleges that he did conduct an unreasonable search. Nielsen acknowledges that the test of the reasonableness of a search under the Fourth Amendment requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. *Goff v. Nix*, 803 F.2d 358 (8th Cir. 1986). Nielsen contends that watching an arrestee change a sanitary napkin is a search under the Fourth Amendment, because an arrestee has a reasonable expectation of privacy when performing such a personal hygiene function. (Plainitff's Brief, Filing No. 35, p. 5, citing *Wilkes v. Borough of Clayton*, 696 F.Supp. 144, 147 (D.N.J. 1988)). Nielsen contends that by remaining in the cruiser while Nielsen applied the new sanitary napkin, Bixler conducted an unreasonable search when the need for the alleged search is balanced against the invasion of her privacy.

Bixler contends that Nielsen's placement of a new sanitary napkin on top of the allegedly saturated one while Bixler remained in the cruiser did not constitute a search, because Neilsen did not have a reasonable expectation of privacy while in Bixler's cruiser.

"A person claiming to have suffered from an unlawful search must first establish as a threshold matter that he had a legitimate expectation of privacy in the particular area

---

[5] Nielsen's brief in opposition to the Motion for Summary Judgment (Filing No. 35) argues only the Fourth Amendment *search* issue. Because Bixler's pursuit of Nielsen resulted in a stop of her vehicle, a seizure did occur. *Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995). To determine the objective reasonableness of a seizure, a court must balance the nature and quality of the intrusion on a plaintiff's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion. (*Id.*). The court must then determine whether the totality of the circumstances surrounding the incident justifies the seizure. (*Id.*). In this case, the government's interest in stopping drivers suspected of intoxication, and testing them for possible intoxication to develop accurate and reliable evidence of guilt or innocence, justified Bixler's detention of Nielsen for the 15-minute observation period prior to the administration of the breathalyzer test. (See Bixler Depo. 25:11 to 26:12 for law enforcement rationale underlying 15-minute waiting period). To the extent that Nielsen argues that a person subject to a lawful seizure has a right to immediate access to private restroom facilities on demand, I reject that argument.

6

searched." *United States v. Delaney*, 52 F.3d 182, 188 (8th Cir. 1995), citing *Rakas v. Illinois,* 439 U.S. 128, 148-49 (1978). An expectation of privacy is legitimate only where "(1) the individual manifests a subjective expectation of privacy in the object of the challenged search; and (2) society is willing to recognize that subjective expectation as reasonable." *Id.*, quoting *United States v. Pinson*, 24 F.3d 1056, 1058 (8th Cir. 1994)(citing *Katz v. United States*, 389 U.S. 347, 361 (1967)).

In support of her position that such an expectation of privacy is reasonable, Nielsen relies on *Wilkes v. Borough of Clayton*, *supra*. *Wilkes* concerned a plaintiff's change of her sanitary napkin in a restroom facility while under the direct and intentional visual observation of an officer. The plaintiff in *Wilkes* challenged the practice under the Fourth Amendment, contending that "the Borough's policy of visually observing all arrestees' use of bathroom facilities, without regard to the offense charged or individual circumstances of behavior and condition, is unreasonable and as constitutionally offensive as a blanket strip search policy since both necessitate an involuntary exposure of genitalia to police personnel." *Wilkes v. Borough of Clayton,* 696 F.Supp. at 146. The court in *Wilkes* found that the policy was unreasonably intrusive, as measured by the interests it was designed to serve. *Id.* at 150.

Even if this Court were to view the decision of the United States District Court for the District of New Jersey in *Wilkes* as a persuasive authority, Neilsen had no legitimate expectation of privacy when in the front seat of Bixler's police cruiser, such as one might have when in a restroom stall. Whether or not she manifested a subjective expectation of privacy when expressing her intention to apply the new sanitary napkin while in Bixler's cruiser, there is no basis to conclude that society has recognized such an expectation as

reasonable. Neilsen was not in a location where one would reasonably expect privacy, nor is there any evidence that Bixler intended to watch her as she applied the new sanitary napkin, or that he did in fact watch her during that 10-second interval. To the contrary, the only evidence on that subject is that Bixler held a notebook between himself and Nielsen with the intention of shielding his view; that he turned his head; and that he did not observe Nielsen as she applied the clean sanitary napkin. (Neilsen Depo. 45:7-25; Bixler Depo. 29:9-15; 31:13-22). Nielsen, therefore, has not satisfied as a threshold matter that she had a legitimate expectation of privacy, as required under *Delaney*, 52 F.3d at 188, and she has not established that any search in fact took place.

## CONCLUSION

The Defendant has demonstrated that there is no genuine issue of material fact in this case, and that the Defendant is entitled to judgment in his favor as a matter of law. Accordingly, judgment will be entered for the Defendant, Rod Bixler, and the Plaintiff's action will be dismissed, with prejudice.

IT IS ORDERED:

1. The Defendant Rod Bixler's Motion for Summary Judgment (Filing No. 25) is granted;

2. A separate Judgment will be entered in favor of the Defendant, Rod Bixler; and

3. The Plaintiff Shawna Nielsen's Complaint will be dismissed, with prejudice.

Dated this 19th day of May, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge